IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | |
| | § | No. 3:18-cr-341-S (1) |
| RAVI KUMAR DOKKU, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Ravi Kumar Dokku is charged by an indictment with violations of 18 U.S.C. § 371 and 18 U.S.C. § 1546(a), Conspiracy to Commit Visa Fraud, and 18 U.S.C. § 1546(a), Visa Fraud.

Mr. Dokku has filed a Motion to Modify Conditions of Pretrial Release, *see* Dkt. No. 169, which United States District Judge Karen Gren Scholer has referred to the undersigned for a hearing, if necessary, and determination under 28 U.S.C. § 636(b), see Dkt. No. 170.

For the reasons and to the extent explained below, the Court DENIES Mr. Dokku's Motion to Modify Conditions of Pretrial Release [Dkt. No. 169].

**Legal Standards**

Under the Bail Reform Act, the Court is required to "order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not

commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a), unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b).

If release under 18 U.S.C. § 3142(b) on personal recognizance or an unsecured appearance bond will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, the Court is directed to release a defendant "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person – ... (iv) abide by specified restrictions on personal associations, place of abode, or travel; ... and (xiv) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B); *accord United States v. Byrd*, 969 F.2d 106, 108 (5th Cir. 1992).

In setting conditions under 18 U.S.C. § 3142(c)(1), the Court's task is to

ascertain and "impose the least restrictive combination of conditions that the court determines will reasonably assure [a defendant's] appearance as required and the safety of any other person and the community." *United States v. Yeh*, No. 3:08-cr-96-P, 2013 WL 6568118, at *2 (N.D. Tex. Dec. 13, 2013). And the Court is directed to impose conditions that will reasonably assure – not guarantee – the appearance of the person as required and the safety of any other person and the community. *See United States v. Fortna*, 769 F.3d 243, 250 (5th Cir. 1985).

"The judicial officer [who set a defendant's conditions of pretrial release] may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). And, "[i]f a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court – (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for ... amendment of the conditions of release; and (2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release." 18 U.S.C. § 3145(a).

**Background**

On July 26, 2018, after a detention hearing, the undersigned United States magistrate judge released Defendant subject to an Order Setting Conditions of Release. *See* Dkt. No. 24.

The Court included among those conditions that Defendant is subject to location monitoring and home incarceration. *See id.* at 2. Mr. Dokku later filed an Unopposed Motion for Modification of Conditions of Release, see Dkt. No. 55, which the Court granted, ordering that Mr. Dokku "is no longer subject to Home Incarceration (as defined in Docket 24), but is instead subject to Home Detention (as defined in Docket 24) and is restricted to his residence at all times except for: (1) employment, (2) education, (3) religious services, (4) medical, substance abuse, or mental health treatment, (5) attorney visits, (6) court appearances, (7) court-ordered obligations, (8) appearances required by government agencies, and (9) other activities approved in advance by the pretrial services office or supervising officer," and that "[a]ll other conditions of release remain in effect," Dkt. No. 56 at 1-2.

The Court then, on the government's motion and after a hearing, further modified the Order Setting Conditions of Release [Dkt. No. 24] "to impose the following additional condition of release to which Mr. Dokku does not object and that the Court finds will, in combination with the existing conditions of release, constitute the least restrictive combination of conditions that will reasonably assure Mr. Dokku's appearance as required and the safety of any other person and the community:

- Defendant Ravi Kumar Dokku shall not personally submit or participate in the process of submitting H1-B visa application for any

new employees.

• Defendant Ravi Kumar Dokku shall not have any direct or indirect contact with any co-defendants outside the presence of his counsel.

Dkt. No. 70 at 5. And, "to facilitate Mr. Dokku's renewing his driver license, the Court [ordered that it] will authorize the Clerk of the Court to release Mr. Dokku's passport directly to one of Mr. Dokku's counsel of record, who shall maintain possession of it and personally accompany Mr. Dokku to the appropriate office get his license renewed and will then personally return the passport to the Clerk's Office the same day." *Id.*

In his latest Motion to Modify Conditions of Pretrial Release, Mr. Dokku asks the Court to "modify the Defendant's conditions of release by ordering the location monitoring device be removed" and explains that he

> is charged with visa fraud related to H1B applicants. The allegations do not include any crimes of violence. There are no weapons or minors involved in this case. Moreover, Mr. Dokku has no prior criminal history. Additionally, the Court recently permitted Mr. Dokku to renew his passport. Each of his expired passports and his renewed passport have all been returned to the clerk's office by the undersigned. He has been on pretrial release since July 2018, and he has remained compliant with his conditions of release including location monitoring. Furthermore, and perhaps most importantly, U.S. Probation Officer Stuart Siegel is completely supportive of the removal of Mr. Dokku's location monitoring device. In fact, it was Mr. Siegel who initiated email communications with the undersigned today regarding his position in support of the electronic monitor being removed.
>
> The Government, however, remains opposed to Mr. Dokku's monitor being removed since he has yet to plead guilty and he does not have a confirmed medical condition requiring removal.

*Id.* at 1-2.

The government then explained why it opposes Mr. Dokku's request, where he

> has not pointed to any new information that materially affects the Court's determination at the time of the bail hearing that Dokku's presence at all future proceedings could not reasonably be assured without location monitoring. Indeed, none of the arguments Dokku advances explicitly or even implicitly suggest that the incentive he has to flee, which is the reason for the location monitoring requirement in the first place, is now lessened to the degree that it can be met by some other condition. The government respectfully requests, therefore, that the Court deny the defendant's motion.
>
> ....
>
> To begin with, Dokku's argument that he is not accused of a crime of violence or other heinous crime, and that he has no prior criminal history, are irrelevant. Each of these facts was known to the Court at the time of the detention hearing, and yet the Court found that the least restrictive set of conditions that would assure his appearance as required and protect the community included a location restriction (home incarceration) verified by electronic monitoring. *See* Order Setting Conditions of Release, Dkt. No. 24, § 7(q), at 2. And the Court necessarily found these facts immaterial not just the once, but a second time when, in response to Dokku's request, the Court vacated the home incarceration requirement and substituted home detention, but did not vacate the requirement that he be subject to electronic monitoring. Dkt. No. 56, at 1. Thus, the Court necessarily has found these arguments immaterial and insufficient in the past, and Dokku has not put forward any argument why they should be afforded new or additional substance now.
>
> Additionally, the argument that this Court allowed him to renew his passport is of little relevance to the question of what are the least restrictive conditions that reasonably will assure the goals of the Bail Reform Act. The Court Order to which Dokku refers required that his counsel retrieve the passport, that Dokku use it solely for renewal purposes, and that he then return the new passport to his counsel to again be surrendered to the Court. *See* Dkt. No. 127. Two facts are critical here. First, Dokku was not given his passport free and clear of any restrictions, and he did not possess it for any significant period of

time free from the obligation to renew it promptly and return it to counsel. And second, and most important, Dokku was subject to location monitoring throughout this period. Thus, location monitoring was the means of ensuring that Dokku did not take inappropriate advantage of the opportunity provided by the Court. So the inference Dokku asks the Court to draw from this episode – that he is not a flight risk because he possessed and did not use his passport to escape – is not warranted. The only logical inference one can draw is that Dokku did not make an effort to flee while he was subject to home detention confirmed by continuous electronic monitoring.

This leaves Dokku's argument that he has been compliant with all the terms and conditions of his release since he was first released by the Court in July 2018, and, presumably on the basis of his compliance, his request is supported by his probation officer. Defendant's Motion, supra, at 1. With all due respect to the Probation Officer, the government believes that Dokku's compliance, under these circumstances, is not entitled to any significant weight.

Initially, that Dokku may have complied with all the conditions the Court has imposed does not change, and in particular does not lessen, the underlying risk of flight that led the Court to impose the location and monitoring restrictions. *See United States v. Yeh*, No. 3:08-CR-96-P, 2013 WL 6568118, at *3 (N.D. Tex. 2013) (Horan, M.J.) ("[T]here has been no change, material or otherwise, to the circumstances that are relevant to determining the least restriction combination of conditions that will reasonably assure Defendant's appearance as required."). Dokku is charged in the indictment with several serious federal felonies which, if convicted, subject him to a substantial term of imprisonment. But it is not just a substantial term of imprisonment that gives Dokku an incentive to flee: of even greater moment is that the substantive charges in the indictment are "aggravated felonies" under the Immigration and Naturalization Act ("INA"), *see* 8 U.S.C. § 1101(a)(43)(P) (designating a violation of 18 U.S.C. § 1546(a) as an aggravated felony), which means that if he is convicted even of one such charge, it is highly likely that, immediately following his prison term, he will be turned over to the custody of immigration officials and deported summarily from the country. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (identifying an alien with aggravated felony conviction as removable); 8 U.S.C. § 1229b(b)(1)(C) (aggravated felony conviction disqualifies alien from petitioning for cancellation of removal). Given the grave consequences Dokku faces if found guilty of

any of the charges in the indictment, he plainly has a substantial incentive to flee. And Dokku has not made even the slightest showing how that risk – which obviously was of such moment before that the Court determined that it could not, consistent with the Bail Reform Act, release Dokku without location restriction and electronic monitoring – has changed, let alone sufficiently lessened or attenuated, or that it can be met by some other equally effective condition. *See Yeh*, 2013 WL 6568118, at *3.

Moreover, it is telling that in the instant motion Dokku is not petitioning the Court to further relax or eliminate the locations restrictions it imposed at the time of the bail hearing and revisited at least once thereafter. *See* Dkt. No. 24, § 7(q); Dkt. No. 55. Although it is understandable that Dokku no longer wants to wear an ankle monitor, the electronic monitoring condition does not affect or restrict his liberty: it is only a means the Court chose to enforce the location restriction requirement that it concluded was necessary to reasonably assure Dokku's appearance as required. *See United States v. Campbell*, 309 F. Supp. 3d 738, 750 (D.S.D. 2018) (electronic monitoring is a technological means of ensuring compliance with conditions; and it is less intrusive than other means of ensuring compliance); *cf. United States v. Gardner*, 523 F. Supp. 2d 1025, 1032 (N.D. Cal. 2007) (electronic monitoring is not a substantial restriction on a pretrial defendant's liberty; it is only a means to enforce a location restriction required by the Adam Walsh Act). Without electronic monitoring or some reasonable equivalent, the Probation Office has no reasonable, effective, and efficient means of ensuring that Dokku in fact complies with the location restriction that remains part of his release conditions. And it is hard to see how removing the restrictions that have carefully circumscribed his movements and ensured his presence make him less of a flight risk.

Dkt. No. 172 at 1-8 (footnote omitted).

Mr. Dokku replies that,

[b]ecause the Government did not apprise the Court of the current status of the case regarding Mr. Dokku, the current status of each of the similarly situated co-defendants charged with "serious federal felonies" who are subjected to "grave consequences" upon conviction, as well as the weight of the evidence against Mr. Dokku, the undersigned will endeavor to present a more complete picture here.

1. Since being arrested on these charges, Mr. Dokku has been diagnosed with diabetes, which causes blood clots in his legs. He has been receiving medical treatment or blood clots and fatty liver following his release on pre-trial conditions. USPO Stuart Siegel is aware of Mr. Dokku's health conditions. Also since being arrested on these charges, Mr. Dokku and his wife welcomed a baby boy into this world in January 2019.

2. The undersigned has yet to request any modification of Mr. Dokku's conditions of release. He did such upon receiving an email from USPO Stuart Siegel on April 14, 2020, stating:

> Our office has been reviewing location monitoring cases to see about cases in which we would recommend removal of the equipment/condition. I wanted to reach out and see if you would be willing to file a motion with the court to see if they would consider removing Mr. Dokku's location monitoring condition. He's been on pretrial release since July 2018 with location monitoring. Our office would support removal of the location monitoring condition and equipment for Mr. Dokku. I'm not sure what the government's position is on this.

3. The Government's position in Mr. Dokku's case is in complete contrast to the Government's position of the similarly situated co-defendants. ….

4. In its Response, the Government claims that USPO Stuart Siegel "may not have known" that the Government would object and the basis for its objections. Government's Response, Dkt. No. 172, at 6, fn 1. On April 22, 2020, after the Government filed its Response, the undersigned had a phone conversation with USPO Stuart Siegel. He stated that despite the Government's opposition, he remains supportive of Mr. Dokku's monitoring device being removed considering it has been twenty (20) months since this condition was imposed and because of his low risk designation. He confirmed that Mr. Dokku is a PTRA Risk Assessment Level One, which is the lowest risk level available. Mr. Siegel is required to visit Mr. Dokku at least once a month to check the monitoring equipment. It is unknown if the Government has attempted to communicate with Mr. Siegel regarding this matter at any time since it filed the Response.

5. In its Response, the Government claims that "location monitoring was the means of ensuring that Dokku did not take inappropriate advantage of the opportunity provided by the Court" when the Court allowed Mr. Dokku to retrieve his passport from the Clerk's

> office for renewal purposes. Government's Response, Dkt. No. 172, at 6. Perhaps the Government would also suggest that Mr. Dokku does not know how to use a pair of scissors or box cutters. As USPO Stuart Siegel stated on April 22, 2020, electronic monitoring is merely a "tool, and if someone [like Mr. Dokku] is doing what they are supposed to be doing since August 1, 2018, then there is no reason why we cannot recommend removal." Notes from April 22, 2020 phone conversation with USPO Stuart Siegel.
>
> ….
>
> 7. Further investigation by the undersigned has revealed new information that was not presented to the Court at the time of Mr. Dokku's July 26, 2018, detention hearing regarding the weight of the evidence, which is a factor to be considered under 18 U.S.C. § 3142(g)(2). Specifically, it has come to light that the immigration law firm representing Mr. Dokku during the time period alleged in the indictment filed and caused to be filed – both via the U.S. mail and electronically – H1-B documents with forged signatures, which were material to such applications being approved. The Government is aware of this evidence. However, it is unknown at this time when the Government first became aware of this evidence. Specifically, it is unknown whether the Government was aware of this evidence at the time of indictment or at the time of Mr. Dokku's July 26, 2018 detention hearing.

Dkt. No. 178 at 1-7 (footnote omitted).

## Analysis

The Court has carefully considered Mr. Dokku's and the government's arguments and the supervising pretrial services officer's recommendation. But, for essentially the reasons that the government has laid out, the Court finds that, although Mr. Dokku's compliance to date is commendable and what the Court expects of a defendant released on conditions under 18 U.S.C. §§ 3142(b) or 3142(c), nothing that Mr. Dokku presents now changes the Court's finding that the existing

combination of conditions of release, including home detention and location monitoring, still constitute the least restrictive combination of conditions that will reasonably assure Mr. Dokku's appearance as required and the safety of any other person and the community. The risks of nonappearance or flight that led the Court to impose a location restriction to be enforced by location monitoring remain at this time for the reasons that the government explains in its response.

## Conclusion

For the reasons and to the extent explained above, the Court DENIES Dokku's now filed a Motion to Modify Conditions of Pretrial Release [Dkt. No. 169].

SO ORDERED.

DATED: April 28, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE